UNITED PRESS v. A. S. ABELL CO. et al.

(Supreme Court, Appellate Division, First Department.   February 8, 1901.)

1. CONTRACTS — CONSOLIDATION OF COMPANIES — ACTION FOR BREACH OF CONTRACT — DIRECTION OF VERDICT.

Defendants contracted to purchase news of the Associated Press until January, 1899.   In 1892 the Associated Press ceased business, and assigned its contracts to the United Press of New York, which subsequently agreed to pay its net monthly income to the United Press of Illinois, a corporation organized in 1887 for the dissemination of news.   The business of the New York corporation, including the collection of its revenue and the payment of its expenses, was to be conducted the same as before.   A guarantied dividend on its stock was to be paid by the Illinois corporation.   Held, that the direction of a verdict for defendants in an action by the United Press for breach of defendants' contract was erroneous, since the question whether the plaintiff was the United Press of New York or the United Press of Illinois was for the jury.

2. SAME — AGENCY — MAINTENANCE OF ACTION.

The United Press of New York agreed to pay its net monthly income to the United Press of Illinois, the business of the New York corporation, including the collection of its revenue and the payment of its expense, to be conducted without interference from the Illinois concern, and as a consideration the latter guarantied the payment of a certain dividend on the stock of the former.   Held, that such contract did not constitute the New York corporation the agent of the Illinois corporation in the conduct of the business of the former concern as far as third persons were concerned, and hence the New York corporation could maintain an action for breach of a contract assigned to it before the consolidation agreement.

Appeal from trial term, New York county.

Action by the United Press against the A. S. Abell Company and others. From a judgment in favor of defendants, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

William C. Davis, for appellant.
Henry T. Fay, for respondents.

RUMSEY, J. As there is no appeal from the order granting the extra allowance, and, indeed, no order appears to have been entered, that ground for the appeal cannot be reviewed; but, in view of the conclusion we have reached, that is not very important. The United Press is a domestic corporation. It was organized in 1892. The defendants are various Maryland corporations engaged in the business of publishing newspapers in the city of Baltimore, who seem to have entered into a partnership to receive and pay for items of news to be used in their papers. In 1889 the defendants made an agreement with the Associated Press of New York by which the Associated Press was to furnish to the defendants, in Baltimore, a comprehensive summary of all the news of the world which it might obtain; and in consideration of that service the organization known as the Baltimore News Association, composed of these defendants, agreed to pay $600 a week. The contract was to continue until the 1st of January, 1899. In 1892 the Associated Press stopped business, and its contract with the ·defendants was, with their consent, assigned to the United Press, which assumed the contract and performed the services for some time, and received the pay; but it is alleged that in 1894 the defendants refused longer to be bound by the contract, and refused to pay the stipulated price for the services, and it is for the profits lost by the breach of the contract that the plaintiff brings this action. The summons was served only on Felix Agnus, one of the officers of the Baltimore American. His defense, so far as it is material here, was simply a denial that the plaintiff was the United Press to whom this contract was assigned by the Associated Press. The facts, so far as they are undisputed on that question, are that the United Press of New York was a corporation organized in 1882 with a capital of $20,000 for the purposes of collecting and furnishing news. In 1887 another corporation of the same name was organized in the state of Illinois, and in 1892 that corporation entered into a contract with the United Press of New York by which the United Press of Illinois agreed to make endeavors to strengthen and improve the news service of the United Press of New York by supplying it with wires and additional telegraphic facilities which were not obtainable by it, and guarantied to the United Press of New York the payment of the expense of operating its business, including its taxes to the city of New York, and, in addition thereto, a dividend of $1.50 upon each share of the capital stock annually; and in consideration thereof the United Press of New York agreed to pay to the United Press of Illinois, in monthly installments, all the net income that accrued from its business.. It was further agreed that the United Press of New York should retain and keep intact as a working

capital the sum of $10,040.67, then in its treasury, which had been derived from the sale of franchises, and should continue to conduct its business, to collect its revenues, and pay its expenses as had been its practice theretofore.  It is shown, and not denied, that the United Press of New York was engaged afterwards as before in the business of collecting news, and selling it to various newspapers, and that the Illinois company did nothing of the kind, but confined its business purely to supplying capital to the New York company in pursuance of the contract just referred to.  It was shown that on the 8th of December, 1892, when the Associated Press ceased to conduct its business, it made a transfer to the United Press of all its property and its contracts.  That transfer included an agreement to consolidate with and transfer to the United Press all its contracts and arrangements for the collection and sale of news on the execution of an agreement by that corporation to assume all its liabilities, and to give to each of its members a perpetual franchise in the United Press upon the terms which were specified.  It appeared that in pursuance of that contract the Associated Press transferred all its cash in bank and its assets to the United Press; that that transfer was received by Walter P. Phillips, the secretary of the United Press.  It was testified to by Mr. Mason, the assignee of the United Press of New York, that the organization which received those assets was the United Press of New York, the plaintiff in this action; that the United Press of New York was at that time doing business with the Baltimore News and Journal, but not with these defendants, who had their contract with the Associated Press; that the United Press of Illinois never delivered any news reports, but it was the United Press of New York that was engaged in the business of selling and distributing the news in Baltimore; that there was a dispute over the transfer of the Associated Press business to the United Press between the defendants and the United Press with reference to the receipt by the United Press of money from the Baltimore Evening News for news which was sold to it; that news had been sold by the United Press of New York to the Evening News, and the defendants insisted that they were entitled to it under that provision of their contract with the Associated Press which provided that they were to receive all money for news sold to any newspaper in Baltimore outside of their association, and they claimed that the sum of $4,300 received from the Baltimore News should be paid to them. It appeared without dispute that the United Press of New York paid that sum.  It appeared that the United Press of New York received the money for the news sold, and turned it over to the United Press of Illinois; that the United Press of New York had a clientage of about 400 papers.  It appeared from the testimony of Laffan that he was the vice president of the United Press, the plaintiff in this action, and that he transacted the business between the United Press and the defendants with respect to the $4,300, and he said that that money was paid by the plaintiff.  It appeared from the testimony of Agnus that the Baltimore News Association, after the 8th of December, 1892, received its news reports from the plaintiff; but it is fair to say in that regard that, although Gen. Agnus swore to that fact, yet he testified that all he knew about it was that he received the news from the United Press,

and he did not know which Press it was. He never saw their charter. It appeared from the testimony of Mr. Phillips, the secretary of the association, who transacted this business, that he was the secretary of the plaintiff; that when the transfer was made, on the 8th of December, 1892, he was a director of the plaintiff; that the plaintiff sent out a notice of the transfer, on the 8th of December, 1892, of the Associated Press to it; that the plaintiff after that moved the New York Associated Press business from its offices where it had been conducting business. That was substantially the testimony given for the plaintiff. On behalf of the defendants it appeared that the two corporations were identical in name; that before the 8th of December, 1892, when the transfer was made, there had been turned over by the United Press of Illinois to each of the two members of the Associated Press stock of the nominal value of $72,500, but for what purpose does not appear; that when the matter of the transfer of the Associated Press to the United Press first came up it was insisted that the United Press, as a condition to the transfer, should turn over the same amount of stock, but that Mr. Laffan, who was at that time vice president of both of the United Press associations, refused, giving as a reason simply that that matter could not be considered for the present. It was shown that before that time an agreement had been mooted between the two corporations named the United Press, by which the United Press of New York agreed to transfer all its business and property to the United Press of Illinois, but it does not appear that that agreement was ever carried out. It does appear, with reference to that matter, that as a part of that agreement it was proposed that the United Press of Illinois should issue franchises to the persons to whom they contracted to sell news, and that two franchises to two of their customers were issued, dated on the 8th of December, 1892. It was also made to appear that various things were due in pursuance of the contract by way of transferring the business of the United Press of New York to the United Press of Illinois, but there was a serious question whether that contract was ever made, or, if it was made, whether it took effect before the 8th of December, 1892; and there was no positive evidence of any agreement between the United Press of New York and Illinois, except the agreement made in 1887. There was some testimony tending to show that the $4,300 spoken of above was received by the United Press of Illinois, but that evidence was quite indefinite. Upon the whole case we think that there was a question for the jury as to whether the plaintiff in this action was the United Press of New York, which received this contract from the Associated Press, and, if the jury had found for the plaintiff on that issue, it would not have been proper to set aside their verdict.

But it is said that by the contract of 1887 between the two corporations the United Press of New York became the agent of the United Press of Illinois to do its work, and that whatever assignment it took was in fact for its principal, and did not vest any title in the United Press of New York. But that contract is not susceptible of any such construction. It is provided in it that the New York company should retain its capital, and should continue to conduct its

business, to collect its revenues, and pay its expenses, and that, after that had been done, it was to pay its net income over to the United Press of Illinois. The essential part of this contract was that the business of the United Press of New York remained in that corporation, and the Illinois corporation had no control over it, nor any right to interfere with it. All that was reserved to it was the right to receive the net income after the payment of the expenses. Whatever may have been its interest in that income, the contract certainly did not make the United Press of New York its agent to conduct the business so far as third parties were concerned. Upon the whole case, we think that it was erroneous to order a verdict for the defendant, but that the question whether the New York corporation was the person interested in this contract should have been submitted to the jury, if, indeed, the evidence did not establish that fact as a legal proposition.

The judgment must, therefore, be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.