THE UNITED PRESS, Respondent, v. THE A. S. ABELL COMPANY, Proprietor of "The Sun" Newspaper, and Others, Defendants, Impleaded with FELIX AGNUS, Manager and Trustee of the "Baltimore American" Newspaper, Appellant, the Said Defendants Composing and Constituting the "Baltimore News Association."

*Amendment, after verdict, so as to charge the defendant in a representative capacity — set aside after a judgment entered on the verdict has been vacated — contract to furnish news to a newspaper — it involves confidence and peculiar skill — a general assignment disables a party from its further performance — measure of damages.*

Where, after the rendition of a verdict against a defendant, sued in his individual capacity, an order is made amending the summons and complaint so as to charge such defendant with liability in a representative instead of in his individual capacity, and judgment is entered upon the verdict against the

defendant in his representative capacity, which judgment is subsequently vacated by the Appellate Division on the ground that the court had no power to grant the order amending the summons and complaint, such order amending the summons and complaint may properly be vacated and judgment be entered upon the verdict against the defendant in his individual capacity.

A contract between a news-gathering association and a number of newspaper proprietors, by which the news-gathering association agreed to furnish to such newspapers, for a specified term, a comprehensive summary of all the news of the world for a certain sum per week, involves a relation of confidence between the parties and the exercise of peculiar skill, knowledge and discretion, and, by making a general assignment for creditors during the term of the contract, the news-gathering association disables itself from performing its part of the contract.

Where, in an action brought by the news-gathering association against the newspaper proprietors to recover damages for the refusal of the latter during the term of the contract to accept and pay for the services rendered by the news-gathering association, it appears that after such breach of the contract and during the term thereof the news-gathering association made an assignment for the benefit of creditors, damages should only be awarded for the period intervening the breach of the contract and the making of the general assignment.

In such a case the damages should be ascertained by subtracting from the weekly compensation which the news-gathering association was to receive under the contract, the weekly cost of performing such contract and by multiplying such sum by the number of weeks which elapsed between the breach of the contract and the making of the general assignment.

APPEAL by the defendant, Felix Agnus, manager and trustee of the "Baltimore American" newspaper, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 23d day of August, 1902, upon the verdict of a jury, and also from an order entered in said clerk's office on the 27th day of January, 1902, denying the said defendant's motion for a new trial made upon the minutes, with notice of an intention to bring up for review upon such appeal an order entered in said clerk's office on the 21st day of August, 1902, granting the plaintiff's motion to vacate and set aside an order theretofore entered in the action amending the summons and complaint.

For decision on former appeal, see 73 Appellate Division, 240.

*Austen G. Fox,* for the appellant.

*William C. Davis,* for the respondent.

FIRST DEPARTMENT, FEBRUARY TERM, 1903.          . [Vol. 79.

PATTERSON, J.::

This action was brought to recover damages for the breach of a contract. Many defendants are named in the summons and complaint, but service was alone made on the defendant Felix Agnus. Issue was joined upon his answer, and upon a trial a verdict was directed by the court in favor of the defendant. From the judgment entered upon the verdict thus directed an appeal was taken to this court, and it was reversed and a new trial ordered. (58 App. Div. 611.) That reversal was placed upon the ground that the condition of the evidence as it appeared in the record required the submission of an issue of fact to the jury. The cause was brought on for retrial and the jury found a verdict in favor of the plaintiff in the sum of $35,000. The defendant Agnus moved for a new trial, which motion was denied and an order was duly entered thereupon. After the verdict was rendered on the second trial, the plaintiff, by motion, asked leave of the court to amend the summons and complaint so as to charge the defendant Agnus with liability, not as an individual but in a representative capacity, "as manager and trustee of the Baltimore American and Commercial Advertiser, a newspaper published in the city of Baltimore under a deed of trust made to him by Charles C. Fulton and wife." That motion was granted and thereupon judgment was entered against Agnus in his representative capacity. After the entry of such judgment, Agnus moved to vacate it, the ground of the motion being that the court had no power to amend the process and pleadings, Agnus not having been made a defendant in a representative capacity, but being sued only as an individual. His motion was denied, and from the order of denial an appeal was taken to this court, when such order was reversed and the motion was granted. By the judgment thus vacated it was adjudged that the United Press, the plaintiff, recover of Felix Agnus, as manager and trustee of the Baltimore American and Commercial Advertiser, a newspaper, etc., the sum of $35,000 and costs. When that judgment was vacated by the order of this court the case stood in this situation, viz., it had been fully tried upon an issue of the liability of the defendant as an individual; a verdict had been rendered after that full trial, on that verdict the plaintiff was entitled to judgment against Agnus individually, but the summons and complaint had been amended by

an order which, if it stood unrevoked, would make a judgment against Agnus individually in conflict with the allegations of the complaint as to his liability. In that state of the case, the plaintiff moved for an order vacating the order by which the summons and complaint were amended, and that motion was granted, the effect being to reinstate the summons and complaint as they were before the amendments were allowed. Thereupon a judgment was entered upon the verdict by which it was adjudged that the plaintiff recover of the defendant Felix Agnus, manager and trustee, the word " as " being omitted, and the words " manager and trustee " being merely descriptive. This is treated as an individual judgment against Agnus, who now appeals therefrom, and from the order denying the motion for a new trial and, in his notice of appeal, he brings up for review the order vacating the order by which the summons and complaint were amended.

It is urged by the appellant that the order allowing the amendment of the summons and complaint was, in effect, a discontinuance of the action as to the defendant Agnus individually; that it was final and one which the court had no power to vacate or set aside. Or, in other words, that, notwithstanding the invalidity of the order by which the amendments were allowed, he, in consequence of the granting of such invalid order, was effectually and finally dismissed from the action and could not be brought back into it. It may be conceded that an amendment of a summons and complaint substituting one party for another amounts to a discontinuance of the action as against the party stricken out as a defendant, and that the party thus stricken out is no longer before the court; but the order making the substitution must be a valid and binding order, and one within the power of the court to make. Here, the order of amendment was invalid. It was so declared to be by this court, which said, " The defendant Agnus having been sued individually only, *the court had no power* after a trial had, and a verdict rendered against him in that capacity only, to amend the summons and complaint so as to make the action one against him in his representative capacity. By the amendment, a new and independent cause of action was substituted by making another party a defendant in the action ( *Van Cott* v. *Prentice*, 104 N. Y. 45), a cause of action upon which issue had never been joined, and one which the defendant in

his representative capacity had never had an opportunity to defend."
(73 App. Div. 245.)

The court having no power to make that order, nothing was
accomplished by it; no new defendant was admitted, and no old
defendant was discharged. It remained upon the files of the court
as an order obligatory upon no one, determining nothing, and was
properly vacated, because it remained in form merely as an obstruc-
tion to the entry of a proper judgment.

With the verdict of the jury on the merits, as the facts were
made to appear by the evidence, we see no reason to interfere. The
evidence on the second trial is substantially the same as that con-
tained in the record of the first trial. It is unnecessary to rehearse
the facts in detail, as they are quite fully set forth in the opinion of
this court written by RUMSEY, J., and reported in 58 Appellate
Division, 611. A general reference to what was in controversy
between the parties will now suffice. The New York Associated
Press, an organization engaged in the business of collecting and sell-
ing to newspapers for publication commercial news and other reports
of a general and miscellaneous character, both domestic and foreign,
entered into a contract with the Baltimore News Association, which
was composed of the proprietors of various newspapers, by which
the Associated Press agreed to furnish to these Baltimore associated
newspapers "a comprehensive summary of all the news of the world
which it might obtain," for which the Associated Press was to be
paid the sum of $600 weekly, with a special payment for reports of a
certain character not material to the present case. The Baltimore
News Association, or those who composed it, became bound by the
agreement not to use or permit to be used the news thus furnished,
either directly or indirectly, except for publication in the newspapers
belonging thereto, and such other papers published in the city of
Baltimore as the Baltimore News Association might contract to
supply. The agreement was to remain in force from its date, which
was the 11th day of April, 1889, to the 1st day of January, 1899.
Business was done under the contract, the Associated Press furnish-
ing, and the newspapers comprising the association called the Balti-
more News Association receiving, reports of news until the 8th of
December, 1892, when the New York Associated Press assigned
and transferred the contract to the United Press. After that assign-

ment, the Baltimore News Association received and paid for news reports furnished by the United Press, and thus ratified and acquiesced in the transfer or assignment. On or about the 17th of December, 1894, all of the defendants, except one Edward Raine, withdrew from the contract and have ever since refused to perform their part of it or to accept and pay for news service furnished by the United Press. On the 29th day of March, 1897, this plaintiff, the United Press, made an assignment in insolvency.

The principal issue of fact before the jury related to the plaintiff being the real party to whom the contract had been assigned by the Associated Press. The defendant alleged that the plaintiff was not the real party in interest, but that the assignment by the Associated Press of the contract with the Baltimore News Association was to the United Press of Illinois, another and different organization, although the two corporations were substantially controlled by the same persons. On this subject the evidence was conflicting, but such as was given strongly preponderated in favor of the plaintiff. The plaintiff, the United Press of New York, was a corporation with a capital of $20,000. It was organized in 1882. In 1887 the United Press of Illinois was organized with a capital of $1,000,000. In 1892 an agreement was entered into between these two corporations by which relations were established between them. It was held on the former appeal that by such agreement the United Press of New York was not constituted an agent of the United Press of Illinois and that the essential part of the contract was that the business of the United Press of New York remained in that corporation and the Illinois corporation had no control over it nor any right to interfere with it. We think it clear, from the whole evidence, that the assignment by the Associated Press of New York of the contract was to the United Press of New York and that it was so understood by the parties to that transaction.

The chief objection now urged by the appellant is that the court on this second trial ruled out evidence which was very material on this issue as to the corporation to which the contract was assigned. The court rejected a proposed contract which was offered in evidence. It was between the United Press of Illinois and the proprietor of one of the newspapers constituting the Baltimore News Association. That contract was never executed, but contained a

recital that the United Press of Illinois had assumed the debts and was to perform the contract between the New York Associated Press and the A. S. Abell Company, one of the newspaper proprietors composing the Baltimore News Association. It is urged by the appellant that this document was not offered as one binding upon the United Press corporation, but as evidence to be taken in connection with the oral testimony of a witness (Mr. Venable) of admissions made by officers of the plaintiff and for the purpose of contradicting the testimony of those officers as to the real party in interest in the contract upon which this action was brought. The proposed, unexecuted and undelivered instrument was properly rejected. This court had held upon a construction of the contract between the United Press of New York and the United Press of Illinois, that no such relations had been established between those two corporations as were claimed by the defendant, and the recital in the unexecuted proposed contract of the United Press of Illinois with the A. S. Abell Company could have no effect in changing the construction which this court had given to the contract between the two United Press corporations. The mere recital in that contract would not be effective as a contradiction of the testimony of the officers of the plaintiff, and could not be legitimately used to support Mr. Venable's contradiction of what those officers had testified to.

The defendant also excepted to rulings of the court in the rejection of testimony offered by several witnesses concerning the relations between the United Press of New York and the United Press of Illinois, and to the court striking out certain testimony. We have examined these exceptions and do not find that the rulings to which they apply were erroneous. It was proper to expunge those portions of the testimony of Mr. Walsh which the court directed to be stricken out. His answers to questions put were matters of opinion and did not relate to facts, and the same may be said of the testimony of Mr. Sackett, who was an attorney, and who testified that he knew from the transactions of the New York Associated Press that they were dealing with the Illinois corporation, and from the transactions as they occurred, and hence he inferred that the transfer of the contract was made to the United Press of Illinois.

Criticism is made that the rulings of the trial judge in rejecting much of this evidence were based upon a misapplication of what

had been decided by this court on the first appeal. When some of the rejected evidence was being offered, the court said, " I am bound to charge the jury that according to the Appellate Division the New York company was not the agent of or subsidiary to or the operative of or creature of the Illinois company." That was, in substance, the decision of this court as to the effect of the agreement between the two corporations. But the trial judge did not charge the jury that the agreement was conclusive of the subject of the relations established between the two corporations. He charged as follows: " At the outset of the case, we are met by the question whether or not this plaintiff, the United Press of New York, is the proper party to sue. This is the question first to be determined by you, for if the United Press of New York was not the owner of the contract involved, then your verdict must be for the defendant. In considering this branch of your inquiries, you must take into consideration all the facts and circumstances testified to by all the witnesses, together with all the documentary evidence contemporaneously made." The court then proceeded to state to the jury what these two United Press corporations were. With respect to the contract establishing the relations between them the jury were told that its provisions were " only material to this issue, so far as they may throw light upon the question as to who is the proper plaintiff in this case."

The evidence established a breach of the contract on the part of the defendants. No point is raised as to the several liability of the defendant Agnus under the contract, and the question remains as to the proper rule of damages applicable to the case. On that subject the court instructed the jury that the measure of damages " is the difference between what the plaintiff would have received during the time for which this contract had been carried out and during the time that it had yet to run and what it would have cost the plaintiff to perform the service which it had agreed to perform."

The appellant contends that the rule thus laid down was erroneous and that the proper rule was the market value of the contract at the date of the alleged breach. The rule announced by the court as applicable to this case is, in substance, that the measure of damage was the value of the contract for the unexpired portion of its term. That insisted upon by the appellant cannot apply, for a contract of

the character of that in suit can have no market value. It could not be sold and was not assignable without the consent of the Baltimore News Association, or the newspaper proprietors who composed that association. That feature of the contract was given great prominence at the trial and was made an issue before the jury, who were instructed to say whether or not the defendant consented to the substitution of the United Press for the New York Associated Press. Although the ordinary rule as to market value could not be applied, the plaintiff would be entitled to substantial damages for the breach of the contract. In *Devlin* v. *Mayor* (63 N. Y. 25) it is said that "The party who has been wrongfully deprived of the gains and profits of an executory contract, may recover as an equivalent and by way of damages, the difference between the contract price, the amount which he would have earned and been entitled to recover on performance, and the amount which it would have cost him to perform the contract." (Citing several cases.) The important case of *Wakeman* v. *Wheeler & Wilson Mfg. Co.* (101 N. Y. 205) is instructive on this subject. It is said in the opinion of the court: "But when it is certain that damages have been caused by a breach of contract and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. * * * Losses sustained and gains prevented are proper elements of damage. Most contracts are entered into with the view to future profits and such profits are in the contemplation of the parties, and so far as they can be properly proved, they may form the measure of damage. As they are prospective, they must, to some extent, be uncertain and problematical, and yet on that account a person complaining of breach of contract is not to be deprived of all remedy. It is usually his right to prove the nature of his contract, the circumstances surrounding *and following its breach,* and the consequences naturally and plainly traceable to it; and then it is for the jury, under proper instructions as to the rules of damages, *to determine the compensation* to be awarded for the breach. When a contract is repudiated *the compensation* of the party complaining of its repudiation should be the value of the contract. He has been deprived of his contract, and he should have in lieu thereof its value, to be ascertained by the application of rules of law which

have been laid down for the guidance of courts and jurors." The phrase, "the value of the contract," applied to a case of this char- acter, means the value of the contract to the party complaining of the breach; a value not dependent upon speculation or conjecture, but to be ascertained in view of all the circumstances of the case relating to the nature of the contract, its requirements and the ability of the complaining party to perform it to the end. The contract involved in this suit is peculiar in its nature; it is not one merely to furnish merchandise, or for ordinary work, labor and serv- ices. It is one, the proper performance of which depends upon skill, knowledge and discretion. It involves, to some extent at least, a relation of confidence between the parties, for it is obvious that the publication of libelous or defamatory matter communicated by a news gathering association would render the publisher of that matter liable in an action to an aggrieved party. As said in the *Wakeman* case, "the circumstances surrounding and following" the breach and the consequence naturally and plainly traceable to it are matters of consideration for the jury in awarding compensa- tion for the breach. Here it is plainly inferable that this peculiar contract could not be performed by the United Press after the assignment in insolvency on March 29, 1897. It disabled itself by that assignment from the performance of the contract. It may be true that in ordinary cases of breach of contract a general assign- ment would not prevent a recovery of damages for the term extend- ing beyond the time at which the assignment was made. The fact that the assignment was not set up in the answer of the defendant here has no bearing upon this question of the measure of damages. While a general assignment for the benefit of creditors does not effect a rescission or termination of an executory contract of the assignor (*New England Iron Co.* v. *Gilbert El. R. R. Co.*, 91 N. Y. 153; *Vandegrift* v. *Cowles Engineering Co.*, 161 id. 435), yet in a case where the subject-matter of the contract establishes a relation of confidence between the parties and the exercise of peculiar skill or knowledge is required, we think the general rule should not be held to apply, for a plaintiff should not be compensated for that which he cannot perform. The reason of the rule that ordinarily a gen- eral assignment does not operate as a rescission of a contract is that that contract may still be carried out by the assignee or an agent

of the assignor, but here the contract, in its nature, was such that it could not be carried out by anybody other than the United Press, and, therefore, that circumstance is one to be taken into consideration by the jury as _following_ the breach of the contract as is suggested in the extract above quoted from the _Wakeman_ case. The foregoing considerations are sufficient to indicate that the rule announced by the learned trial judge was not entirely applicable, but that does not call for a reversal of the judgment.

A verdict upon the issues being proper, the amount of the recovery may be reduced and there is no difficulty in making that reduction upon the elements which were before the jury and upon which the amount of their verdict evidently was based. It was in evidence that by an agreement between the parties the rate of weekly compensation was at one time reduced from $600 to $500. The breach of the contract was as of the 17th of February, 1894; the date of the general assignment of the plaintiff was March 29, 1897. The court left it to the jury to say whether the value of the contract should be calculated at the rate of $600 or $500 a week, and the figures show that the jury adopted the latter amount. The total cost to the plaintiff of performing the contract was $290 a week, as we think the evidence clearly shows. Mr. Mason, a witness for the plaintiff, who was familiar with all the business of the United Press, testified to the effect that the expense incurred by the plaintiff in performing the contract with the Baltimore News Association was about $240 a week, in addition to which there was an expense for allotment of wire rentals of about $50 a week, whereupon counsel for the plaintiff said, "if that is your best judgment, we will make the offer to reduce the amount to that extent and stand upon it." The court then asked the witness (referring to the expense of the distribution of the news service of the plaintiff at Baltimore in the performance of the contract in litigation) " Therefore, upon this statement you make up, so far as your judgment is concerned, $240 plus $50, or $290 per week ?" to which the witness responded, " Yes."

The verdict of the jury was for $35,000, and it was for the period from February 17, 1894, to January 1, 1899, that is, for a period of 254 weeks. Assuming the price to have been $500 a week, the aggregate under the contract for the time allowed by the jury

would have been $125,000. At $290 per week, cost to the plaintiff, the aggregate was $73,660, leaving $51,340. But the verdict of the jury being for $35,000, covering a period of 254 weeks, they found that the weekly value of the contract to the plaintiff was $137.80, which the figures clearly show was their estimate of the compensation to which the plaintiff was entitled for the breach. As we think the damages should be limited to March 29, 1897, the value of the contract at the rate of $137.80 per week for 162 weeks was $22,323.60, to which amount the verdict should be reduced.

Upon the plaintiff's stipulating to reduce the judgment as entered to the sum of $24,881.55, the judgment as so reduced and the order denying motion for new trial should be affirmed, without costs of appeal; if such stipulation be not given, the judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., INGRAHAM, HATCH and LAUGHLIN, JJ., concurred.

Upon plaintiff stipulating to reduce the judgment as entered to the sum of $24,881.55, the judgment as so reduced and the order denying motion for new trial affirmed, without costs of appeal; if such stipulation be not given, judgment and order reversed and new trial ordered, with costs to appellant to abide event.